190333 People of the State of Illinois, faculty, by Richard Leonard, v. Don White, appellant, by Andrea Newton. Good afternoon. Yes, gentlemen, good afternoon. Madam Assembly, may I please the Court? There are three issues before the Court today. The first is whether the District Court dared in failing to grant a motion to suppress in a quasi-miss. And secondly, whether there was sufficient evidence to support the verdict of guilty on the question of possession of intent to distribute cocaine. And thirdly, whether the District Court abused the discretion in sentencing Mr. White to ten years in prison. With respect to the first issue, there are three reasons why there were problems with the warrant affidavit in this case. First of all, there was no probable cause to believe that Mr. White or the car were involved in any kind of illegal conduct on the day that the warrant was issued for the search of the car. Second of all, the affidavit for the search warrant did not include any information about the reliability or credibility of Pat Doe, the alleged cooperating informant. And finally, the information was stale. And I will address each one of these points. First of all, with respect to the lack of sufficient evidence in the affidavit to support finding a probable cause, the allegation in the affidavit was that there was a confidential informant who had at some time in the past, within an alleged two-week period, had engaged in a controlled by, or what was characterized as a controlled by, in a particular car, a silver Monte Carlo. And that that informant had claimed that the person in the car who sold him less than a gram of cocaine was, in fact, Mr. White. Now, the amount of cocaine was not included in the affidavit. There was no time included in the affidavit. There was no location or place included in the affidavit. There was a vague allegation that at some time this informant had engaged in what was characterized as a controlled by. There was no follow-up to find out who was in the car. And Officer Coleman, when he testified, admitted that he didn't know who was in the car except for what the informant told him. Secondly, with respect to, this is why the credibility and the bias of the informant was key. Because the affidavit, the officer relied entirely on the word of the informant to establish his probable cause to search Mr. White's car. And, in fact, it wasn't even Mr. White's car. The police officer knew that the car was registered to DeVisha White-Bomar and assumed that there was a relationship with Mr. White, but didn't investigate what that relationship was. At the hearing, Ms. Bomar testified, and she said that was her car, that there were approximately 13 people, many of whom were surgeons, including her boyfriend, who used that car at any given time. And that she wasn't aware of who it was that used the car on the day that it was searched. The staleness issue arises because, first of all, the warrant wasn't based on the incident at the time, or at the time when the police wanted to go into the car, but it was sometime within the past two weeks. And, as this court knows, an appellate court in Damien has found that the continuity of the offense is more critical than the number of days involved in terms of determining the staleness or not of the information pursued in the warrant. This is easily distinguishable from cases cited by the state in its reply, like Evans, where a period of 18 days was allowed, but that was for the search of a house, not a car, and it involved the search for a shotgun and not for a consumable item. Similarly, in James, also cited by the state in support of the lack of staleness in this particular case, what was at issue there was child pornography on a computer. And it was pretty clear in the court's opinion in James that with a computer, the evidence contained within a computer is not easily disposed of. And even when a person believes that they've deleted the evidence, it's often recoverable, and it's not of the same kind and sort of things as a perishable or consumable bit of contraband, such as drugs would be. So, in this case, there wasn't any reason to believe that if, in fact, there had been a control by a particular car within two weeks, that that same car would be involved in some kind of illegal activity on a day that they picked up Mr. White for his parole warrant. So, without the information about the informant, and without any particular information about the date, time, and location of the alleged transaction, it was not possible for Mr. White to conduct a formal price hearing. And this was the criticism that the state raised against this argument in its brief. And as Franks has said, and the Illinois Supreme Court has said in the same day, that you can't apply Franks so strictly and inflexibly to make a hearing unattainable. And that's what happened in this particular case, because there were so few facts in the affidavit that it would not have been possible to bring affidavits either from Mr. White or from others to say, for instance, as has happened in other cases like Lucente, I am alibi for the date where this alleged informant says that I was engaged in a control by with him because there was no date provided. Similarly, with Caro, there was an allegation about a transaction that happened in an apartment, and there was sufficient information about the date and the location of the apartment that the defendant was able to come with affidavits from his roommates and himself to say, no, there was no drug transaction in that apartment on this date. Without any of that kind of relevant information contained in the affidavit, it wasn't possible for Mr. White to do a phrasing. And that was, in fact, one of the reasons why he filed a motion, a discovery motion, asking for the information that was not in the affidavit. He did a Robillard motion to find out the identity of the informant. He asked for information about the date, time, and location of the alleged transaction, and he asked for information or surveillance reports from that transaction. And none of that information was provided. So it's based on the particular circumstances of this case that Mr. White was forced to go about challenging the affidavit and the motion that he did. And the district court erred in denying his motion because there simply wasn't sufficient information in the record from which a neutral magistrate could have concluded there was probable cause to search the car that Mr. White was in on July 8th. With respect to the second issue, insufficient evidence to support a guilty verdict on the charge of possession of a controlled substance with the intent to distribute it within 1,000 feet of the car. When they went into this car, the Silver Monte Carlo, and found in it cocaine, they found one bag that had two separate bags in it, each containing 2.676 grams in one and 3.397 in the other. And cases such as Nixon, McElmore, and Robinson have all found that such quantities as this are not sufficient on their own to establish that somebody intends to distribute the controlled substance in question. Even if you agree with the finding that Mr. White was in constructive possession of the drugs that were in the car that he was in, there was still no evidence that he knew that those drugs were there or that the drugs quantities in and of themselves were enough to establish that he intended to distribute them. Was his fingerprint on one of the bags? His fingerprint was on the external bag that had the two bags of drugs inside. Yes, that's true. But certainly it's not clear when or how any of these things were assembled, and his fingerprint on the bag that was used to place other bags inside of it is not indicative of him necessarily having anything to do with the contents of the bag. Well, it may not be conclusive, but certainly some evidence, wouldn't you agree, that that provides some evidence that he handled those bags? It does provide some evidence that he handled that particular bag, yes, but it doesn't provide any evidence that he intended to distribute what was in the bag or that he knew what was in the bag. And the Nixon case lists several other factors that are considered in deciding whether possession with intent to distribute would be appropriate. Besides the quantity of the drugs, which are not in and of themselves sufficient at that time, in this case, high purity of the drug and the purity of the drugs in this case were not measured. Possession of weapons, there was no possession of weapons in this case. Possession of large amounts of cash, similarly in this case there was not any possession of large amounts of cash. All that was found on Mr. White's person was his wallet, $305, ATM receipts, and a phone. Scanners, keepers, and cell phones, there were other phones found in the car, but as Ms. Bomar testified, many people used that car besides Mr. White. And the cell phones that were found in the car were not specifically identified as belonging to Mr. White or any other person. And they were not introduced into evidence of trial, there was no evidence about phone calls or anything of that nature. Similarly, there was no drug paraphernalia, nor any evidence of packaging, which you might expect to find if somebody was selling drugs out of their car. Nothing along the lines of bags, user quantity, tiny bags, scales, none of that. And Ellison requires the court to look at each case on its own. And certainly it's a leap, certainly a leap of speculation to say that the person's presence in a car necessarily means that that person is aware of all the contents of the car, and much less what they intend to do with any of the contents in the car. Particularly in this case when the car did not belong to Mr. White. Two minutes left. Thank you. And finally, with respect to the sentence in this particular case, the court imposed a sentence of 10 years on Mr. White. And of course, under Illinois law, there has to be at least consideration not only of the seriousness of the offense, but of the potential for rehabilitation of the individual in deciding how much prison time to sentence them. And factors about the seriousness of the offense, according to Daley, include those cited in 730 ILCS 5-5-5-3.1. Whether or not the offense caused or threatened serious physical harm to another, whether the defendant intended to cause physical harm to another, whether he led a lot of buying life beforehand, and his character and attitudes as well as hardship on his dependents. And certainly in this particular case, Mr. White had a history of drug dealing. The amounts that were found in his car were small and not necessarily a distribution quantity, let alone the fact that there was no evidence that he intended to distribute these drugs, much less knew that they were in his particular car. The 10-year sentence also was excessive because ordinarily the quantity of drugs involved in this case would make it not a classic felony, but because of the chance location of where Mr. White was, going to visit a friend of his in his friend's house, which was within five or six hundred feet of a park, it increased the seriousness of the offense to a classic felony, the range for which was six to ten years. So, there was no evidence at trial that Mr. White intended to do anything with the drugs in the car, much less that he intended to sell them, much less that he intended to sell them in a park. So you have several layers of inference that you have to get to before you arrive at the dangerousness or seriousness as contemplated by the statute in Mr. White's case. It seemed also that it was clear at the sentencing hearing that the judge was focused primarily on the seriousness of one of Mr. White's prior offenses, rather than looking at his current record and his current involvement in this particular offense. And so for those reasons, the judge abused his discretion in imposing such a serious penalty on Mr. White in view of both the nature of the evidence and his likelihood for rehabilitation. So his sentence should have been what? At the very least, his, well, I believe that he should have been sentenced, that he shouldn't have been found guilty of possession of contentious drugs. Well, but just, I get it, that if we agree with you on some of these previous issues, we don't even get the sentencing, right? That's correct. Okay, so, talking about the sentencing issue alone, if this judge abused his discretion in sentencing, what would the sentence have been? The sentence at the minimum of the Class X range, which is sincere. Okay, and here's a fellow with a prior conviction for manslaughter. He did. It was a very old conviction, and he had been out of parole, he had been enrolled in school and working in taking care of his family at the time that this arrest occurred. So, looking at his current circumstances, he was certainly a much better candidate for a lesser sentence. And he had already served the time for the manslaughter conviction. If the court has no other questions? Mr. Leonard? May it please the court, counsel, with regard to the first issue, the second argument is misplaced. The defendant is trying to attack the search warrant and the affidavit of the search warrant by a motion to quash arrests and suppress evidence. That's the improper vehicle. The only way to attack the affidavit of the search warrant is by a frank hearing. The trial counsel was not deprived of an opportunity to hold a frank hearing in the trial court. The trial counsel began by arguing the motion to quash arrests and suppress evidence and led into arguments trying to attack the credibility of the confidential search warrant. The trial judge specifically told the trial counsel that you can only do that by a frank hearing instead of the trial judge's advice. The trial counsel continued with the motion to suppress. So, there was no frank hearing below, which is the only way you can attack the search warrant or affidavit. The trial counsel had an opportunity to hold a frank hearing, but he just wanted to do so. So, it's our position that any argument of a frank hearing or lack of an opportunity to hold a frank hearing has been forfeited because there was an opportunity below at the trial court, but trial counsel will reveal himself again. With regard to the second argument, the sufficiency of the evidence. The people maintained that the evidence was oversophisticated, that the evidence was not good, that the evidence was not of a lawful possession of a controlled substance or content to deliver. Considering all of the evidence, I went through my brief and there's many quotes and evidence showing what the officers testified to. I'm just going to give a summary here. Some of the facts that were involved in this case was the defendant was found with 5.7 grams of cocaine in the vehicle that he was driving. He parked the vehicle in front of a residence, you don't know which residence that was, and he got out of his car, locked it, and he threw the keys to his apartment. The officer had seen the defendant driving around the area in this vehicle prior times and earlier in the day that he stopped and threw out the defendant by the elbow and said I have an arrest warrant for you for a probe of violation. Yes, the defendant then, he did handcuff the defendant, put him in the squad car while he waited for his other officers to prepare the search warrant for the vehicle. I have a question, Mr. Leonard. I'm going to back up a little bit. With regards to the Frank hearing, in order to make a preliminary showing, in order to have a Frank's hearing, doesn't the defendant have to show that there was some either a material mistake of fact or something alleged either outright misstatement of the truth or disregard for something? Isn't the whole argument that it was so vague they couldn't even say this can't be true, I wasn't in town on such and such day. They don't have any parameter other than two weeks to deal with and everything is so sketchy that they can't even form the basis for the motion to establish, to make a preliminary showing? Well, that would come out in a Frank's hearing, but you can't use the motion to quash arrest and suppress to establish a search warrant for an affidavit. So, this is the wrong legal theory to do so. There's no way to do that. Through a Frank's hearing, trial counsel was not prevented from holding a Frank's hearing. She just decided to continue with the motion to suppress. So, you are correct that there was a Frank's hearing held, but in this case there was no Frank's hearing. With regard to the other evidence that was found in the vehicle, there were four cell phones. Two of the cell phones were found in the center console along with the suspected drug cocaine. There was one cell phone underneath the driver's seat and one in the defendant's purse. There were three, there were several prescription bottles in the vehicle with the defendant's name on them. There was a receipt for an oil change with the name Dean White in the vehicle. And taken all together, also there was a fingerprint as Ms. Schmidt noted on the bag containing the cocaine. Taking all these facts together and reasonable inferences from them, the evidence was overwhelming that the defendant was not only in possession of the controlled substance, but he intended to deliver the controlled substance within 1,000 feet of a park. It was the defendant who parked the car in front of the presidents. He had the drugs in the vehicle. Officer Mieler testified that he had done hundreds of cases of defendants who were crack users and crack sellers and that it was his opinion that it was packaged for resale because of the large amount of crack cocaine, 5.7 grams, it was packaged in two separate packages. He testified that most crack users only purchase like .2 grams or .5 grams. This is way over what a single user would use. There's no drug paraphernalia found on the defendant or in the car, which indicates that he wasn't using it, he was selling it. If you consider all these facts together, the reasonable inferences that come from these facts is that the defendant was guilty beyond reasonable doubt of intending to sell the correct cocaine within 545 feet, which is measured from the entrance to the park to where the public park is located. This was compared to a sentencing issue. Defendants received a 10 year sentence. This was a class X felony mandatory prison sentence of 6 to 30 years in prison. The defendant was on parole when he was arrested for this offense. This was his third felony and he also had that other conviction for voluntary manslaughter in Iowa, which was he pled guilty to but he was first charged with murder. He received only 10 years in the Iowa Department of Corrections for that. The defendant's sentence was not an abuse of discretion considering his violent character and his previous felony convictions. If you don't have any other questions, I guess that you've approved the defendant's conviction and sentence? No, no other questions. Ms. Gambino, some rebuttal? Thank you, yes. I'd like to go to your question, Justice O'Brien, with respect to the Franks hearing. It wasn't a decision not to conduct one, as you pointed out. It was that there was not enough information contained in the affidavit from which one could conduct a Franks hearing in the way that they're supposed to be conducted. Because without knowing a time, place, or location for the alleged transaction, it's impossible to rebut it. If they had said it was on X day at X time, it's quite possible, given the facts that did come out in both the hearing and the trial, that somebody else altogether had that card and was involved in that transaction. Would a good-faith exception apply? I'm sorry? Would a good-faith exception apply for this officer? No, I would argue that the good-faith exception does not apply because it seems that the control of what goes into the affidavit is within the hands of the officers who put it together. And if you purposely create a Franks-approved affidavit, I think that that cannot be said to be evidence of good faith. You don't put in any of the information that would be needed to challenge the veracity of your claims, and you don't put in any information about the credibility of your supposed witness, and there's no testimony at the hearing that that supposed witness appeared before the magistrate in person. So, no, I don't think that good faith would apply in this particular case. Well, how much do you really need to initiate a Frank charge? For example, let's say the poor soul that's out there, he has no alibi or nothing, but he files an affidavit and says, look, I've never sold drugs to anybody, anytime, anyplace. And so, they've obviously mistaken the informant's dis- and untruthfulness. He said it was me. Is that enough to initiate, get the ball rolling? In looking at the case law, I would say that no, it's not. Because the preliminary shelling has to mean that there are false statements made that are known to be false at the time or in reckless disregard for the truth. And to say that, I don't think you can get very far saying that this police officer is lying outright about what he believes or what he intends to happen. I think it would be found insufficient just for, they would characterize it as a self-serving claim to public integrity if he were to file an affidavit simply saying, I didn't do it. Well, every statement of the defendant is self-serving, but that doesn't make it bad, right? No, I agree, it doesn't make it bad, but I think it wouldn't rise to the level of sufficiency to get your friends hearing if that's all you have. With respect to the facts relied upon, none of the facts relied upon basically go to the question of whether or not Mr. White intended to distribute the drugs that were in his car. He had left the car, the car was locked, he had given the key to somebody else to take, to his sister presumably, because it wasn't his car at the time that he was arrested. And so, it's not a fair inference to say that one, that he knew what was in the car, even if he did, that he was intending to distribute it at that time. Particularly when quantities are such that at least three cases in this state, Nixon, McElmore, and Robinson, have found that quantity is not sufficient by itself to establish an intent to distribute. Nixon said 6.6 grams is not enough, McElmore said 3.3 grams is not enough, and Robinson said that 2.2 and 2.8 gram packages were not enough by themselves to justify. By finding that there was an intent to distribute, and certainly there was nothing else in this case other than the drug quantity that would have supported such a finding. If the court has no other questions, I ask that the conviction be reversed. Thank you Ms. Gambino, Mr. Leonard, likewise. This court will be in recess until 9 o'clock in the morning.